Curia, per

O’Neall, J.
In this case the review of the cases presented by our brother Withers, with his usual diligence, will prevent the necessity of a recurrence to them in this opinion.— I take it that they are all stated correctly in his elaborate judgment below. Still, I have by no means arrived at his conclusion. It seems to me that in the result of his reasoning, “ that upon the return day of the writ against the bail, in this case, ended the period of favor to him,” we find the error which brought his mind to the conclusion that the defendant was not entitled to the favor asked.
It is very true, bail are fixed by the return of the ca. sa. at the term to which it is returnable, subject to one condition, however, introduced into the law originally by favor, but now by settled usage and decisions, as matter of right, to wit: that bail may, at the return term of the sci. fa. against them, and at any time before the end of it, surrender his or their principal in discharge of his or their liability, on the. payment of the costs, up to that term, of the sci. fa., and thereupon all proceedings shall be stayed, and an exoneretur be entered upon the bail piece.
The case of Watson, Johnston & Co. vs. Bancroft, (4 Strob. 218,) is full upon, and decisive of, these matters; and hence, therefore, when the motion for further time was made before brother Withers, the bail still had the right to render, as - it is technically termed, his principal, on payment of costs. Ought not the Judge in this condition of the bail, and under the facts shewn, to wit: that the principal was in the prison rules of *450 Orangeburg District, to have granted the motion ? That it was a matter of discretion, regulated by law, cannot be denied.
It is true, too, I think, that in England, no case precisely like this can be found. Yet I do not think that ought to conclude this matter. Our practice is essentially different from that found in England. Our process is returned to terms widely apart.— Sci. fa. is served, and not completed by two nihils, as in England, except when the defendant cannot be found. Our people are scattered over a comparitively new country. Hence, although we take the doctrine of bail, as a general principle, from England; yet, like most of our legal principles, it is to be modified according to our circumstances.
That it has' been so modified, is apparent from our cases.— Much of the strictness arising out of mere technical terms, has been got rid of,,and we look now to carrying out what is the real object and'purpose of bail.
Undoubtedly bail was given so that the plaintiff might have the body of his debtor in execution. This, it was early supposed, if not complied with, at the return, in fact, of the ca. sa., made the bail liable unconditionally. It was, however, soon found that this was a mere trap for the bail, and that as time, without injury, is never any legal objection to a remedy, it was allowed to the bail to surrender, at the term to which process to charge them might be returnable, on payment of costs. — (Davitt vs. Counsel, 2 N. & McC. 136.) This overlooked the return, in fact, of the ca. sa., which could be made the day after it was lodged, and that hence both it and the sci. fa. might be returned to the same term. — (Saunders vs. Hughes, 2 Bail. 504.) It was, then, held that the ca. sa. must not be returned until, according to its terms, it was returnable, and that a sci. fa. could not be issued until after the expiration of the term at which the ca. sa. was returnable. — (Ancrum vs. Sloan, 1 Kich. 421.) The right of the bail to render their principal in discharge of themselves, at and during the term to which the sci. fa. is returnable, was, by successive decisions, made a matter of right, not depending on favor, but demandable and grantable as of common right. *451 (Glover vs. Gomillion, 2 Rich. 556 ; Watson, Johnston & Co. vs. Bancroft, 4 Strob. 218.) This being so, we might pause here, and say that the defendant, standing on it, might' have asked to be indulged, as here claimed, if he shewed a case of necessity.
But I do not choose yet to begin the argument, which must finally be thus placed. For it is legitimate, before looking to it, to consider whether imprisonment for debt, and the implied satisfaction arising from taking the body in execution, and to secure which the bail is bound, meets with the favor or disfavor of the Legislature of South Carolina.
In 1824, the Legislature provided th^t^^s^e shall be arrested by any writ of capias ad saiiffnc^t^i^^i. (Desprang vs. Davis, 3 McC. 16; Jarves vs. Gibson, Dud. 223.) This was the beginning of reform, where it sh^ld^^^^Bwavor of the weak and powerless. In 1841, tlffij^glslamre extended the prison bounds of the jails of the resp$ctiye,ffif *tMe limits thereof. These provisions, very conckjpVély, she^áímt imprisonment for debt, which has been termed^herf^w of the law, is not in high favor with the representatives of the people, and consequently with the people themselves. This being so, we should certainly fail to carry forward the just and humane notions of the present day, by restricting instead of enlarging the privileges of bail. I return, now, to the point on which this case must be decided, — did the defendant, when he applied for further time to render his principal, shew that necessity which ought to have induced the Court to grant his request 1
It was clear that his principal was then in the bounds of the jail of Orangeburg district, under an arrest by virtue of a ca. sa. There is no doubt, as is said by Ruffin in Granbury vs. Parker & Pool, (3 Dev. 155,) he might have paid the debt, and brought his principal to town! And in the shape in which the question was there presented, it was a conclusive answer; for there, it was as a plea filed to the action on the bail bond. Here, however, the motion preceded any ultimate liability; and the question is, would the Court impose any such additional liability on *452 the bail, unless compelled by a fixed principle of law to do so 1 No case can be found where, before the bail was precluded from a render, such a doctrine is advanced.
Here, the principal was not only in the prison rules, but he was also an applicant for a discharge under the insolvent debtors’s Act. Taking all these facts together, let us inquire, could the bail take the prisoner from the rules, by virtue of his previous custody ? This will be answered by inquiring, could he take him out of the jail'? for the prison rules are in place of the jail. The sheriff could, would, and ought to say, “ I am to hold this prisoner until discharged by law.”
No private power could interfere with this custody. Indeed, I think, the execution of a ca. sa. necessarily supercedes bail, for the time, at least. It might well be questioned, whether custody under it does not relieve the bail. But this is not necessary now. If. the bail could not take him out .of the bounds, has not there been a sufficient case of necessity shewn to relieve him % But it is said the Court will grant a writ of habeas corpus and bring up the prisoner, so as to have him rendered in Charleston. I. deny the proposition. The Court never granted a habeas corpus for an illegal purpose. Such a writ, for the purpose suggested, would create an escape — would make the sureties on the prison bounds bond liable — and would prevent the prisoner from obtaining his discharge under the insolvent debtors’s Act, when he applied for it, and where he was entitled to have it. The prisoner must,.under such a writ, be brought out of the limits of Orange-burg district — this would be an escape, and would make his sureties liable ; he would be unable, under such circumstances, to swear, as required under the insolvent debtors’s Act, to three months consecutive imprisonment, and hence his discharge would be defeated. Such consequences certainly prove that the writ of habeas corpus would not be granted, and also shew a great case of necessity, why the render should be postponed.
I think there is a conclusive reason growing out of the principal’s application for a discharge under the insolvent debtors’s Act. The whole object of imprisonment for debt is, to compel *453 the debtor to pay the debt, or to surrender enough of his estate to pay it, or to surrender the whole in payment of it or of all his debts. The principal had announced to the world, he was ready to give up all he had, under the insolvent debtors’s Act, which would go in payment of his respective debts, according to their priorities. This was all which the plaintiff could have asked, if he had had the defendant then in execution in Charles ] ton. This application has since been carried out, arid this defendant’s principal discharged from the very debt now demanded from the bail. To make the defendant liable, under such circumstances, is such gross injustice, that unless there be some inflexible rule of law, every one would say it ought not to be.
The case of Mannin vs. Partridge, (14 East, 598,) states the very principle on which this motion should have been granted. There the certificate of bankruptcy was obtained after the return of the ca. sa. but before the time allowed, ex gratia, to the bail to render had expired ; and it was held by Lord Ellen-borough, notwithstanding there had been judgment and execution against the bail, and the money paid, yet that they were entitled to be relieved. He states the question, and answers it thus .- — “whether the principal’s certificate, at that period, after the capias ad satisfaciendum was returnable, but before the time allowed the bail by the indulgence of the Court for rendering the principal had expired, entitled the bail to be relieved? And we are of opinion it did.” Here the application for further time to render was before the time allowed the bail by the indulgence of the Court for rendering the principal had expired. If his certificate of bankruptcy then obtained would relieve the bail, ought not a pending application, ending in a similar result, to induce the Court to extend the time of render, so as to let in this complete exoneration, if it should be obtained? I think so. And certainly if the Court has the power to extend the time, there could be no fitter case. The case of Glendining vs. Robinson, (1 Taunt. 321,) is a precedent in point: for there the Court enlarged the time of render. But independent of authority, the power to suspend a liability to result *454 from judicial proceedings, so that justice may be done, is unquestioned and unquestionable.
I think, therefore, the motion made in May Term, 1849, to enlarge the time of render to October Term, 1849, ought to have been granted, and as the principal was, at October Term, 1849, offered to be rendered, that that which ought then to have been allowed must be now allowed. But, unfortunately, since then, and pending this appeal, the distinguished gentleman, the bail in this case, has been called from his family, and his country, to his everlasting home; it is, therefore, necessary to prevent a fixed liability, that his administratrix should have the power of rendering. It is, therefore, ordered, that the motions to reverse the decisions below be granted, and that the administratrix of F. H. Elmore be allowed, on or before the second week of the next May Term, for Charleston district, to render to the sheriff of Charleston district, the body of Thomas T. Stark, in discharge of the bail, her intestate, F. H. Elmore, and on presenting the certificate of the said sheriff, that such render has been made, and paying the costs of the sci. fa. to and including October Term, 1849, that an exoneretur be entered on the bail piece and all proceedings be stayed.
Evans, Frost and Whitner, JJ. concurred.